MARY MARSHALL, as Administratrix, etc., of WILLIS C. MARSHALL, Deceased, Respondent, *v.* THE SACKETT & WILHELMS COMPANY, Appellant.

Second Department, December 29, 1917.

Master and servant — duty of loyalty — action for wrongful discharge — duty of servant to disclose secret agreement with former employer.

The obligation of loyalty, implied in the relation of master and servant, rests upon the rule that he who undertakes to act for another shall not in the same matter act for himself.

Where, in an action for an unlawful discharge, it appeared that the plaintiff's decedent, being an officer and active in the business of a corporation controlled by another company, agreed with it to effect a sale to the defendant of his own corporation, upon a commission based upon an inventory, and two days after making the sale entered into the service of the defendant but did not inform it of said agreement; and that, as the purchase price was to be determined by an inventory which was open to correction, the interests of the parties were adverse, it was error for the court to charge, as a matter of law, that the plaintiff's decedent was not obliged to tell the defendants that he was to receive compensation from his old employers and to refuse to charge that on the issues of loyalty to the defendant it was not necessary for the jury to find there was any actual disloyalty or dishonesty.

It was a question for the jury whether the plaintiff's decedent fulfilled his obligation of service by keeping the agreement secret.

APPEAL by the defendant, The Sackett & Wilhelms Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of

Kings on the 4th day of March, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 3d day of March, 1916, denying defendant's motion for a new trial made upon the minutes.

*Joseph J. Corn* [*Charles Kaufmann* with him on the brief], for the appellant.

*Clarence Blair Mitchell* [*Nelson Shipman* and *William R. Bayes* with him on the brief], for the respondent.

JENKS, P. J.:

Marshall, now represented by the plaintiff, was a servant who sued his master for damages for an unlawful discharge. I think that an error in an instruction to the jury is fatal to the judgment that was entered upon the verdict for the plaintiff. The master pleaded *inter alia* a breach of the obligation implied in the relation of master and servant which I may term loyalty. The obligation rests upon the rule that he who undertakes to act for another shall not in the same matter act for himself. The rule is familiar and has received frequent application. (*Gardner* v. *Ogden,* 22 N. Y. 327, 347 *et seq.,* citing *Aberdeen Railway Co.* v. *Blaikie Brothers,* 1 Macq. 461; *Reis & Co.* v. *Volck,* 151 App. Div. 613; *Dutton* v. *Willner,* 52 N. Y. 318; Labatt Mast. & Serv. [2d ed.] §§ 284, 285, citing *Pearce* v. *Foster,* L. R. 17 Q. B. Div. 536; *Swale* v. *Ipswich Tannery,* 11 Com. Cas. 88; Wood Mast. & Serv. [2d ed.] § 115; 20 Halsbury's Laws of England, 101.)

In November, 1911, Marshall was a stockholder, an officer, and was active in the business of the corporation, the Souvenir Post Card Company, which was controlled by the Isaac H. Blanchard Company. There had been and then was under consideration a sale of stock and part of the assets of the post card company to the defendant, and Marshall took part in the negotiations. On November 20, 1911, the Blanchard corporation executed an agreement with Marshall. Therein the president of the Blanchard corporation stated that he had made up an estimate as of September 1st inventory of an irreducible minimum which must be received, amounting to $86,000, to which amount should be added one-half of the estimated profit on unfilled orders, or whatever amount was received for that item; and whereby it was agreed that if

Marshall succeeded in " affecting " (effecting?) a sale or sales at or in excess of the minimum provided for, " we are to pay you the following commission: $500.00 plus 25% of the overage in excess of the minimum specified herein. This commission is payable when, and only when, collected by us. In the case of partial payments we should apportion them between us, viz.:

| | |
|---|---:|
| Total sale.............................. | $100,000 |
| Minimum, say......................... | 87,000 |
| | |
| Overage............................... | $13,000 |
| | |
| Your share, 25%...................... | $3,250 |
| Plus................................. | 500 |
| | |
| Your total interest.................... | $3,750 " |

On December 30, 1911, an agreement was made between the Blanchard corporation as " vendor," the defendant as " purchaser," and the Souvenir Post Card Company, for a sale of the capital stock and of certain assets of the said company. The agreement for sale is long and specific. It provides for payment on account of part performance and then that the other payments shall be made as provided for. By the article following such provision, the company is to prepare a complete set of inventories and schedules as provided for in the agreement, on or before January 25, 1912, and as soon as completed to notify the purchaser, who shall arrange to complete performance as to taking possession and paying for the same within twenty-four hours after, and shall pay two-thirds of the price ascertained. " *The balance to be payable within two weeks therefrom, provided the inventories and schedules have been found to be correct by the Purchaser, or if incorrect, such corrected balance to be so payable.*" (The italics are mine.) The sale was made, and thereafter, and on January 27, 1912, Marshall, as had been contemplated, entered into the service of the defendant and continued therein for some months, when he was discharged. Marshall admitted that he never informed the defendant of his said agreement with the

Blanchard corporation.    There is no proof that would have justified him in the belief that the defendant had knowledge thereof.

The learned court, referring to Marshall and the defendant, instructed the jury under exception: "There is the single charge that he kept secret from them that he was to get compensation from his old employers.    I charge you as a matter of law he was not obliged to tell them that.    But he was obliged to do his best."    It is to be noted that the court did not tell the jury that "Marshall was not obliged to tell them that" as matter of law, with the intention to leave the question of loyalty to the jury, but that the law absolved the servant from a disclosure of this agreement.    We may infer that the inventory and schedules were duly prepared and delivered on or before January 25, 1912, and, therefore, but two days before the defendant became the servant of the defendant.    Under the agreement of sale, the price was dependent upon that inventory, and the one-third of the price was payable within 12 days after Marshall entered the service of the defendant. That one-third represented the balance payable "provided the inventories and schedules have been found to be correct by the Purchaser, or if incorrect, such corrected balance to be so payable."

The interests of the vendor and the purchaser as to the price, so far as undetermined, naturally were adverse.    As part of the price was determined by an inventory which was open to correction, the interests of the vendor and the purchaser with respect to the inventories naturally were adverse. The defendant had the right to expect that its servant, who undertook to serve it in any matter related to the inventories, would serve the interest of his master alone.    And it had the right to expect that its servant was free to do so unfettered by a possible self-interest.    Yet in this case the jury could have found that self-interest of the servant could make against the master.    For in the nature of things the servant was interested in keeping the inventory as prepared and delivered.    He admits that he received $500 on account of this secret agreement on the day of the sale or the day after.    Naturally he would be interested that correction by the purchaser should not reduce the balance of the purchase price.    He testified on the trial: "Q. Didn't you get more than the $500?    A. Not

yet. Q. You expect to? A. I do hope so. Q. Now, this agreement between you and the Blanchard Company is still in force, isn't it? A. It is. Q. And during the time you were employed by the Sackett & Wilhelms Company it was in force? A. It was." If the scope of the employment of the servant, or the duties committed to him and accepted by him, could array self-interest against the master's interest, unless the servant had reason to believe that at the outset the master knew of this secret agreement, then I think at best for the plaintiff it was a question for the jury whether the servant fulfilled his obligation of service by keeping the agreement secret. It is conceivable that a servant could have an agreement made before he entered service, which might benefit him in dealings between his master and third persons during the servant's term, which agreement or the dealings thereunder could not be affected by the fact of employment or by any word, act, omission or commission of the servant.

The learned court refused, under exception, to charge, except as already charged, that on the issues of loyalty to the defendant, it was not necessary for the jury to find there was any actual disloyalty or dishonesty. " Actual " means " real," " existent." I think that the defendant was entitled to the instruction. (See authorities *supra.*) Otherwise it might be concluded that the vice was not in the secret agreement, but only in action that resulted from it. The master at the time of his discovery of the agreement might be unable to put his finger upon tangible results, and yet would be conscious for the first time that he had intrusted work already done and past undoing to his servant, who at the time naturally could have arrayed self-interest against the interest of his master. I am not clear but that the court theretofore had charged almost, if not altogether, this proposition, so as to avoid the imputation of positive error. But it is not necessary to determine this question in the disposition of the case.

STAPLETON, MILLS, RICH and BLACKMAR, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.